[No. 52237-0-I.   Division One.   October 25, 2004.]

*In the Matter of the Marriage of* DIANE DAUBERT, *Appellant,* and RICHARD JOHNSON, *Respondent.*

484

*Robert C. Kaufman* (of *Herman, Recor, Araki, Kaufman, Simmerly & Jackson*), for appellant.

*Catherine Wright Smith* and *Brendan F. Patrick* (of *Edwards Sieh Smith & Goodfriend, P.S.*) and *Eugene R. Oliver* (of *Holman Cahill Garrett Ives & Oliver*), for respondent.

¶1 APPELWICK, J. — Richard Johnson appeals the trial court's modification of his child support payments on three grounds. First, the trial court failed to enter separate findings of fact and conclusions of law to support the increased support amount. Second, the "scant findings" in the Order of Child Support are not supported by the evidence. Finally, the court's decision was based on untenable grounds and reasons, specifically because the court used a flawed extrapolation method to determine the increased financial obligation. Diane Daubert cross-appeals the trial court's decision to apportion the postsecondary educational expenses equally between the two parents despite differences in their income. She also requests attorney fees for this appeal.

¶2 Failure to utilize the mandatory form for findings of fact was not reversible error. The findings of fact are insufficient to sustain the order of support based on extrapolation from the economic table. Calculating support based on the one-child column of the economic table was error. Apportioning postsecondary education support

equally between the parents rather than in proportion to net income was error. We reverse and remand.

## FACTS

¶3 Richard Johnson and Diane Daubert dissolved their marriage in 1998. They had three children, Richard (Ricky), Russell (Rusty), and Kara. Johnson was and is a dentist and Daubert a dental hygienist. Johnson's net monthly income in 1998 was $13,802; Daubert's was $1,758. Child support was set at the amount at the top of the economic table for each child. Johnson's transfer payment was $600 per child per month.

¶4 In October 2002, Daubert filed a motion to modify the 1998 support for Rusty and Kara. She argued that her interest in modification was a matter of giving the children "opportunities consistent with those given to other children whose parents have comparable incomes and assets." Johnson agreed that child support should be modified and requested it be set according to the child support guidelines.

¶5 The parties filed financial declarations with the court. These declarations suggested that the expenses for each household exceeded the net monthly incomes. Johnson did not provide values for his assets. Daubert provided values for her assets and asserted values for Johnson's. In addition to these declarations, the court considered child support worksheets, income tax returns, check registers, W-2s, bank statements, pay stubs, a trial brief, testimonial declarations from each party, and a reply declaration from Daubert.

¶6 Based on this evidence the child support worksheet adopted by the court showed net monthly income for Johnson of $11,601, decreased from $13,802 in 1998. Daubert's net monthly income was $3,545, increased from $1,758 in 1998. Their combined net incomes were slightly lower than in 1998. Johnson's obligation for monthly maintenance payments of $2,000 to Daubert ended July 2000. Their oldest son is no longer receiving child support.

¶7 Johnson now rents a home on Mercer Island, owns one in Hadlock, Washington, and owns a boat. Daubert owns a home, has remarried, and her husband earns $2,400 per month. The worksheet showed assets net of liabilities of $211,000 for Johnson and $76,900 for Daubert.

¶8 In her declaration Daubert testified that, given her budget, she was unable to provide her children with certain opportunities commensurate with the combined income of their parents, such as SAT (Scholastic Assessment Test) prep courses, summer camps, and various school trips. She also asserted she incurred unreimbursed medical expenses and that the children need orthodontia. Johnson claimed he did not know about the missed opportunities and had not been asked to assist. He did not assert they were inappropriate. Johnson disputed the extent of the need for orthodontia and asserted he was qualified to provide what portion was necessary. He asserted he was unaware of unreimbursed medical expenses.

¶9 Daubert asked the court to increase the amount of support beyond the advisory range for incomes between $5,000 and $7,000. She proposed an amount extrapolated from the child support table based on the parties' combined monthly net income.

¶10 The court commissioner granted Daubert's requested modification and set Daubert and Johnson's combined support at $1,884.46 each for Kara and Russell, increased to $2,423.67 for Kara when Russell graduates from high school. These amounts included an allowance for the uninsured medical expenses. The commissioner apportioned these amounts to the parents based on their respective incomes, meaning Johnson was to pay 76.6 percent and Daubert the remainder. By the time the order was entered, Rusty was already 18. The commissioner also required each party to pay postsecondary educational support for the children. She split this cost equally rather than based on the parents' relative shares of net income. The trial court upheld the commissioner's decision on motion for revision of the commissioner's ruling.

## ANALYSIS

### I. Standard of Review

■■ ¶11 We review child support orders for a manifest abuse of discretion. *In re Marriage of Griffin*, 114 Wn.2d 772, 776, 791 P.2d 519 (1990). To succeed on appeal, the appellant must show that the trial court's decision was manifestly unreasonable or based on untenable grounds or reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

> A court's decision is manifestly unreasonable if it is outside the range of acceptable choices, given the facts and the applicable legal standard; it is based on untenable grounds if the factual findings are unsupported by the record; it is based on untenable reasons if it is based on an incorrect standard or the facts do not meet the requirements of the correct standard.

*In re Marriage of Littlefield*, 133 Wn.2d 39, 47, 940 P.2d 1362 (1997). "The amount of child support rests in the sound discretion of the trial court." *In re Marriage of Stern*, 57 Wn. App. 707, 717, 789 P.2d 807 (1990). We will not substitute our judgment for the trial court's where the record shows that the trial court considered all relevant factors and the award is not unreasonable under the circumstances. *Id.* at 717.

### II. Failure to Use Mandatory Form for Findings of Fact

[3, 4] ¶12 Johnson claims that no finding of fact exists because the commissioner failed to fill out WASHINGTON PATTERN FORMS DOMESTIC RELATIONS (WPF DR) 06.0600, Findings/Conclusions on Petition for Modification of Child Support, and that consequently we must reverse and remand. We recognize that RCW 26.19.035(2) requires written findings and that RCW 26.09.006 requires the use of mandatory forms for all modification actions. We decline to conclude that the commissioner's failure to fill out WPF DR 06.0600 means as a matter of law that she made no findings of fact or that reversal is required in this case. To the contrary, the trial court signed a "Findings and Order" which provided,

among other things, that:

1. The father has sufficient wealth and resources that the amount ordered will not work a hardship on him[.]

2. The children need the additional amount to have [a] standard of living commensurate with that of their father's.

3. The children will benefit by the opportunities available to them from the additional funds.

The elements of the mandatory form that were not included in the Findings and Order entered by the court (such as jurisdiction, reason for modification, incremental increase and payment plan) are not at issue in this appeal. Any failure to use the proper form is harmless error in this case. The question is whether the findings which were made are supported by the evidence and support the conclusions of law and order of the court.

III. Sufficiency of Findings of Fact

¶13 Johnson claims that the trial court's "scant findings" are unsupported by the evidence, and therefore the trial court abused its discretion by modifying the child support order. Accordingly, he asserts we must reverse that order.

¶14 Johnson relies on *In re Marriage of Leslie*, 90 Wn. App. 796, 804, 954 P.2d 330 (1998), for the proposition that "the trial court must consider what additional amounts should be paid commensurate with the parents' income, resources, and standard of living in light of the totality of the financial circumstances." (quoting RCW 26.19.001). He also relies on *In re Marriage of Fiorito*, 112 Wn. App. 657, 665, 50 P.3d 298 (2002), for the proposition that "[w]ithin the scope of that discretion is the choice of deciding that no additional award is appropriate." He cites *In re Marriage of Scanlon*, 109 Wn. App. 167, 180, 34 P.3d 877 (2001) for the proposition that "[c]hild support is designed to meet the needs of the children at issue; its sufficiency is not measured by whether it financially strains the obligor parent."

¶15 From this legal framework Johnson argues that the court's application of the extrapolation formula is not a consideration of the totality of the financial circumstances required by *Leslie* and that the court did not consider his debts or his inability to pay additional support. He asserts the court's finding that the amounts ordered will not work a hardship is not a basis to decide if the support is sufficient. He argues the court was not presented "evidence of extracurricular activities, cultural or enrichment activities, or any other programs in which [Daubert] might enroll the children or the cost thereof upon which the court might base an award in excess of the advisory amount of support." Finally, he argues that based on the lack of substantial evidence to support the increased amount as ordered, the court abused its discretion.

A. Evidence Considered

¶16 The trial court had before it the prior child support order, the financial declarations of the parties, tax returns, W-2 forms, wage stubs, credit card statements, financial statements, and check registers. Johnson elaborated in his declaration on his significant tax debt and lack of liquid assets. Information about the value of assets was not provided by Johnson, but was supplied by Daubert. The record appears to contain significant information about the assets, liabilities, income, and expenses of the parties. Nothing indicates that the ability of the parties to provide complete information was in any way limited. The child support worksheets adopted by the court constitute findings of fact to the extent of the information contained in them. The worksheets indicate calculation of net income, allowance for uninsured medical expenses, and lists values for assets of the parties which appear to be net of liabilities. The worksheets become incorporated as findings of fact for purposes of the child support order.

¶17 Daubert stated in her January 2001 declaration that the basic needs of the children were being met under the current support amount, which was set at the top of the

table based on combined net incomes of $7,000. She indicated, however, that the children could benefit from orthodontia. She indicated Ricky and Rusty had to forgo SAT prep courses because she could not afford them. She indicated that Rusty was not able to go on trips with his high school band or on a cultural trip with friends to Vietnam. The children had wanted to attend numerous summer camps, but she could not afford them. Daubert stated the children would benefit from better, more up-to-date computers and peripherals. Rusty was scheduled to graduate in June 2001 and would require postsecondary support.

¶18 Johnson indicated he still would support Ricky in postsecondary education if he reenrolled and that this expense should be taken into account. He indicated that he agreed Rusty could benefit from orthodontia and that he was able and willing to provide it, but that Daubert did not agree he could provide it. He argues that he was never told about the travel opportunities with the band or about Vietnam. He states he paid for a three-week trip for Rusty to New Zealand, had taken Kara and Rusty on two trips to Mexico, had taken all three children to Hawaii, and had taken the children on multiple trips to Canada. He indicated he was never informed of SAT prep classes or about summer camp opportunities. He indicated the children had access to three computers, a CD burner, color printer, fax and scanner.

¶19 Daubert replied that tuition for Ricky had ended the preceding fall. She confirmed Johnson had not been informed about or asked to pay for SAT prep classes, the travel opportunities she referred to, or the summer camp opportunities. She noted the New Zealand trip was paid for while the parties were still married.

## B. Setting Support Beyond the Economic Table

¶20 Johnson argues that the trial court erred by extrapolating his increased obligation from the economic table, which cuts off at combined net incomes of $7,000. He claims that the legislature has approved only presumptive and

advisory methods for determining child support. He argues that because the child support schedule includes only data for parents with a combined income of $7,000 or less, using it is unsound at higher income levels.

### 1. Basic Considerations: Necessity and Reasonableness

¶21 The basic child support obligation is the amount of support derived from the economic table. RCW 26-.19.011(1). Additional amounts for support are authorized by several provisions of the statute. Extraordinary health care expenses are an additional amount of child support to be apportioned between the parents. RCW 26.19.080(2). Day care and special child rearing expenses are also additional amounts of child support to be apportioned between the parents. RCW 26.19.080(3). Special child rearing expenses include but are not limited to private school tuition, day care, and long distance transportation between the parents' residences under the residential schedule. *Id.* The Washington State Child Support Schedule Commission Report (Report)[1] listed orthodontia, tutoring, and summer camps as other examples of additional shared costs. Report at 14; Supplemental Report Worksheet Instructions at 2. Setting support at amounts above the basic support amount in the economic table is authorized when incomes exceed $7,000. RCW 26.19.065(3). The amount of support for incomes within the economic table may also be exceeded by deviation. RCW 26.19.075.

¶22 An order for support in excess of the basic support obligation requires the court to determine the necessity for and the reasonableness of those additional amounts. RCW 26.19.080(4). In addition to necessity for and reasonableness of the amounts, the trial court must

[1] The Washington State Child Support Schedule Commission (Commission) was created by Laws of 1987, chapter 440. The Commission filed a final report to the legislature dated November 1, 1987. The Commission filed a supplemental report to the legislature dated January 26, 1988. By Laws of 1988, chapter 275, the legislature authorized the commission schedule, adopted by rule, to go into effect July 1, 1988. The schedule was enacted as a statute and the Commission was terminated by Laws of 1990, 1st ex. sess., chapter 2.

consider whether the additional amount to be paid is "commensurate with the parents' income, resources and standard of living," in light of the totality of the financial circumstances. *See* RCW 26.19.001; *Leslie*, 90 Wn. App at 804.

¶23 Since incomes above $7,000 are not in the economic table, setting support for incomes above $7,000 does not require a deviation. As noted in *Leslie*, requiring a deviation would inappropriately narrow the scope of the inquiry and contravene legislative intent. *Leslie*, 90 Wn. App. at 804. However, since the factors for deviation in RCW 26.19.075 satisfy the "commensurate with the parents' income, resources, and standard of living" intent of RCW 26.19.001, those factors are an appropriate part of the consideration of the totality of the circumstances when determining additional support amounts for incomes above $7,000.

¶24 The question remaining is whether a court may determine the amount of child support by extrapolation from the economic table.

## 2. Use of Extrapolation From the Table

¶25 Daubert relies on *In re Marriage of Clarke*, 112 Wn. App. 370, 379, 48 P.3d 1032 (2002), for the proposition that "the statute expressly invites the court to extrapolate from the existing schedule when the parents' income exceeds the amounts calculated in the schedule." However, no authority was cited for this proposition and the statutory language does not contain such an express invitation.

¶26 The *Clarke* court also explained that an absence of specific findings to support the extrapolated amount is not fatal. *Clarke* at 380-81. However, RCW 26.19.020, .065(3) and .080(4) all require the court to enter findings of fact when establishing a child support amount above the amounts in the economic table. The findings must explain why the amount of support ordered is both necessary and reasonable. Cursory findings are not sufficient. Factors to be considered in determining the necessity for

support include but are not limited to the special medical, educational and financial needs of the children. *See In re Marriage of Rusch*, 124 Wn. App. 226, 98 P.3d 1216 (2004). Factors to be considered in determining the reasonableness of the support include the parents' income, resources and standard of living. RCW 26.19.001; *Leslie*, 90 Wn. App at 804.

> Extrapolation programs do not base calculations on economic data. Instead, they merely extend the numbers in the table out to the appropriate income level and provide a child support number. Therefore, the figures provided by the extrapolation program are not based on the child's specific, articulable needs. They merely continue the economic table past the $7,000 mark. Had the legislature intended this result, the legislature would not have capped the table at $7,000.

*Rusch*, 124 Wn. App at 233. Using an extrapolation figure without more presumes that the extrapolated amount is the right of the party, regardless of need. But if children do not have a need for child support exceeding the statutory maximum, the court cannot award the child support exceeding the advisory number. *Rusch*, 124 Wn. App. at 233.

¶27 The remaining question is whether the court entered findings establishing the necessity for and the reasonableness of the support it determined by extrapolation.

C. Inadequate Findings of Fact

¶28 Daubert asked for additional child support for orthodontia, missed travel opportunities, missed college test prep classes, missed summer camps, and better computers and accessories. No specific cost amounts for these needs appear in the record. Johnson responded that he could provide the orthodontia, the children had adequate computers and peripherals, and that he did not know the children had missed trips, camps or college test prep classes. He did not assert the trips, camps or college test prep classes were inappropriate.

¶29 The combined net income of the parents was down slightly from the incomes at the time of the previous order

though still above the $7,000 cap of the economic table. The court increased support for Kara and Rusty from the $850 per child at the top of the table to $1,880 per child based on extrapolation beyond the table. The question is whether the findings of fact entered by the court support this increase.

¶30 The court made three findings in paragraph 3.22 of the Order of Support:

1. The father has sufficient wealth and resources that the amount ordered will not work a hardship on him[.]

2. The children need the additional amount to have [a] standard of living commensurate with that of their father's.

3. The children will benefit by the opportunities available to them from the additional funds.

The fact that the children will benefit by the opportunities available to them from additional funds is not the test for additional support. It is not enough that the funds might be spent on allowable or beneficial opportunities. The opportunities and expenditures must be appropriate bases for adding additional support and must be both necessary and reasonable.

¶31 Orthodontia is an appropriate basis for additional support under RCW 26.19.080(2). Report at 14. Summer camp, SAT prep classes, computers and travel for extracurricular activities or cultural experiences are within the appropriate bases for additional support under RCW 26.19.080(3). Report at 14.

¶32 However, Daubert identified only missed camps, missed classes, and missed trips. The record contains no evidence that Rusty was still in band and that the high school band had future travel plans before his graduation from high school or that any other travel, such as the trip he missed with friends, was contemplated.

¶33 The record does not disclose whether SAT prep courses were still needed for Rusty or needed for Kara. Past events alone cannot provide a basis for future support. Without evidence of the future necessity of these expendi-

tures, the court cannot make and did not make the finding of necessity required by the statute.

¶34 The court made no finding of whether Rusty or Kara should have orthodontia or whether Johnson should provide the orthodontia. The court made no finding of whether the children were in need of updated computer equipment, whether one computer was sufficient or two were required to meet their needs, or what peripherals were needed, if any. Without cost estimates, the court had no basis to determine an amount to award for the opportunities sought and had no basis to make findings about the reasonableness of that amount. Parents are entitled to know what the additional child support is supposed to cover and for what things, if any, support was not provided.

¶35 The trial court stated that additional support was necessary for the children to have a standard of living commensurate with their father. However, this is not the test. The mere ability of either or both of the parents to pay more, whether based on consideration of income, resources or standard of living, is not enough to justify ordering more support. *Scanlon*, 109 Wn. App. at 179-80. The test is the necessity for and reasonableness of the amount considering the totality of the circumstances. This test looks at the standard of living of both parents, not just the one with the higher income.[2]

¶36 Here, the court made no findings of fact with respect to Daubert. However, it raised the support obligation of Daubert from $251 per month to $864 per month even though Daubert testified in her declaration and affidavit that her budget did not have room for additional spending. This must be addressed in the totality of the circumstances. Findings of fact are required.

¶37 Johnson argued he had no ability to pay additional support due to high tax debt. While it appears that the court made no adjustment in support for the tax debt of

---

[2] Child support is not intended to be used to equalize the standard of living of the parents' households. That is the function of maintenance.

Johnson, it made no findings about the tax liabilities. Taxes are a deduction from income. Therefore, they are taken into account when establishing the basic support obligation. RCW 26.19.071(5). Debts involuntarily incurred may provide a basis for deviation. RCW 26.19.075(1)(c). Back taxes are not a debt involuntarily incurred. Even here, where a deviation does not apply, allowing a subsequent credit for leaving the tax obligation outstanding would be a double deduction. It was proper to deny his request for lower support based on these liabilities, but a finding of fact was warranted.

¶38 Johnson argues that the court's finding that the increased support will not work a hardship is not a sufficient basis for increased support. As noted above, *Scanlon* so holds. However, this finding is not inappropriate considering RCW 26.09.100(4), which allows the court to deny a modification if it would work a hardship.

¶39 The findings of fact entered by the court are not adequate to sustain the additional child support, which was ordered above the economic table amount. We remand for findings with respect to the necessity for additional support, above the amount in the economic table at the $7,000 income level, of the reasonableness of the cost, and of additional facts necessary to satisfy the totality of the circumstances test.

## IV. Postsecondary Education

¶40 Daubert cross-appeals the allocation of the postsecondary child support ordered for Rusty. The parties do not challenge either that postsecondary educational support should be paid for Rusty or the total amount of that support. The sole issue before us is the allocation of that support obligation between the parents. The court ordered the postsecondary support be paid on a 50-50 basis. Daubert argues that support should be apportioned on the basis of net income in the same manner as basic child support. Johnson argues that the court has discretion to apportion postsecondary educational support equitably be-

tween the parents, including an equal allocation, and argues that there is no authority for Daubert's position that support must be apportioned in proportion to income.

¶41 The child support schedule shall be advisory and not mandatory for postsecondary educational support. RCW 26.19.090(1). As noted in *Leslie*, 90 Wn. App. at 803, the statute does not define the term advisory. The commission report, however, does explain what they meant by that term when the legislature approved the schedule originally:

> A schedule may be mandatory, presumptive, or advisory. A mandatory schedule means that the numbers obtained from the tables must be applied strictly in each case without deviation. A presumptive schedule means that the schedule must be followed unless deviation can be justified by the evidence. An advisory schedule means that the schedule may be used and considered as a guideline or it may be disregarded entirely.

Report at 17. Arguably this could mean that in postsecondary educational support decisions, the court has discretion to follow the child support schedule, to ignore the child support schedule, or to pick and choose which provisions to follow. This interpretation raises several potential conflicts with application of portions of the statute to other minor children of the parties and with the stated intent of the statute of which this provision is a part.

¶42 The term "child support schedule" is defined as the standards, economic table, worksheets, and instructions, as defined in chapter 26.19 RCW. RCW 26.19.011(2). In defining terms, the legislature was mindful that its definitions would not always apply: "Unless the context clearly requires otherwise, the definitions in this section apply throughout [chapter 26.19 RCW]." RCW 26.19.011. In interpreting the child support statute, our primary objective is to carry out the legislature's intent. *See State v. Esters*, 84 Wn. App. 180, 184-85, 927 P.2d 1140 (1996). In the context of the potential conflicts noted above, we must determine if the context requires us to conclude the legislature did not

intend the definition of "child support schedule" to apply in RCW 26.19.090(1).

¶43 First, RCW 26.19.090(1) is itself one of the standards within the child support schedule. Literally read, the provision making the standards within the child support schedule advisory is itself advisory. We do not presume the legislature intended such an absurd result. The balance of RCW 26.19.090 provides:

(2) When considering whether to order support for post-secondary educational expenses, *the court shall determine* whether the child is in fact dependent and is relying upon the parents for the reasonable necessities of life. *The court shall exercise its discretion* when determining whether and for how long to award postsecondary educational support based upon consideration of factors that include but are not limited to the following: Age of the child; the child's needs; the expectations of the parties for their children when the parents were together; the child's prospects, desires, aptitudes, abilities or disabilities; the nature of the postsecondary education sought; and the parents' level of education, standard of living, and current and future resources. Also to be considered are the amount and type of support that the child would have been afforded if the parents had stayed together.

(3) *The child must enroll* in an accredited academic or vocational school, must be actively pursuing a course of study commensurate with the child's vocational goals, and must be in good academic standing as defined by the institution. *The court-ordered postsecondary educational support shall be automatically suspended* during the period or periods the child fails to comply with these conditions.

(4) *The child shall also make available* all academic records and grades to both parents as a condition of receiving postsecondary educational support. *Each parent shall have full* and equal access to the postsecondary education records as provided in RCW 26.09.225.

(5) *The court shall not order the payment* of postsecondary educational expenses beyond the child's twenty-third birthday, except for exceptional circumstances, such as mental, physical, or emotional disabilities.

(6) *The court shall* direct that either or both parents' payments for postsecondary educational expenses be made directly to the educational institution if feasible. If direct payments are not feasible, then the court in its discretion may order that either or both parents' payments be made directly to the child if the child does not reside with either parent. If the child resides with one of the parents the court may direct that the parent making the support transfer payments make the payments to the child or to the parent who has been receiving the support transfer payments.

(Emphasis added.) Each of these subsections contains mandates to the court or the parents or the child. There is no reason for the legislature to use mandatory language in the section if the section applies only to postsecondary support and is merely optional.

¶44 Second, the legislature intends that the child support obligation should be equitably apportioned between the parents. RCW 26.19.001. Postsecondary educational support is child support. The schedule achieves equitable apportionment of support for minor children based on the income of the parents. If the entire schedule is advisory, a court could elect to apply the schedule for postsecondary support and under the schedule would apportion support between the parents based on income. However, a court electing not to apply the schedule could ignore the income of the parents and place the burden on one parent or apportion it in any manner the court saw fit. This would result in vastly different rules applied to similarly situated families and vastly different outcomes.

¶45 But, the legislature intended the use of a state-wide schedule which would benefit children and their parents by increasing the equity of child support orders, by providing for comparable orders in cases with similar circumstances, and by reducing the adversarial nature of the proceedings by increasing voluntary settlements through the greater predictability achieved by a uniform state-wide child support schedule. RCW 26.19.001. These purposes cannot be achieved except accidentally if the individual trial courts

are left to pick and choose which provisions of the statute to apply or to altogether ignore the detailed and balanced policies of the statutory scheme and choose any apportionment of child support between the parents the court may deem appropriate.

¶46 Third, child support shall be determined under chapter 26.19 RCW. RCW 26.09.100(1). The child support schedule shall be applied in all proceedings in which child support is determined or modified. RCW 26.19.035(1)(c). If child support is not determined under the schedule, which is chapter 26.19 RCW, how is it to be determined? Neither chapter 26.09 RCW nor chapter 26.19 RCW provides for an alternate basis to set support.

¶47 Fourth, under the child support schedule children within the family are treated equally. Failure to apply the child support schedule to all the children in a family could result in very disparate levels of support between those children. For instance, RCW 26.19.065(1) places a cap on total child support paid by either parent for all children at 45% of that parent's net income. If the schedule does not apply to the college-bound child, the cap would not apply either. However, since the schedule would apply to the younger siblings the support paid for the postsecondary child nonetheless counts against the cap for the parents. This could force a reduction in child support for siblings who are still minors and subject to the schedule.

¶48 Further, the schedule adjusts the level of support for children based on the number of children in the family for whom support is provided. If the schedule does not apply to the postsecondary child, the court would not have to consider support paid to minor siblings when setting postsecondary support for an older child. Yet when calculating support for the younger minor children, the schedule applies and requires consideration of the postsecondary child, because this child is still a child receiving support.[3]

---

[3] We note the trial court calculated the child support for Kara under the economic table column for one child when Rusty was still receiving postsecondary child support. This issue was not appealed and is not before us.

¶49 Failure to apply other aspects of the schedule could affect the standard support calculation and could result in additional disparate treatment of younger siblings compared to the postsecondary child. These aspects include: failure to use the same definitions of what is includable or excludable from gross income, failure to recognize the same deductions from income, failure to recognize the impact of other children dependent on the parents, failure to treat assets or debt the same, and failure to treat income of the child or of new spouses or other adults in the household in the same manner.

¶50 The legislative scheme of the child support schedule, apart from RCW 26.19.090(1), demonstrates great care to standardize the level of support for all children within the family based on the age category of the child and number of children supported. We cannot imagine the legislature intended to make the provision for postsecondary support, which is discretionary, more favorable to the postsecondary student than the provision for support for minor children for whom the schedule is obligatory, much less to do so at the expense of the minor children.

¶51 When the Washington State Child Support Schedule Commission commented on postsecondary support, it focused on the differences in expenses for postsecondary education:

> College and vocational training expenses are different from the expenses needed to support a minor child. Additionally, a child in college may have a responsibility to assist in providing a postsecondary education. The schedule should be advisory rather than presumptive when setting support for children who have attained the age of 18 and have completed their secondary education.

Report at 20. The support necessary to cover the postsecondary expenses differs from the expenses for minor children. Expenses for minor children are presumed from the economic table. Therefore, it would make sense for the legislature to intend that the economic table should not be applied to all postsecondary support cases. If a

postsecondary student lived at home, application of the schedule including the economic table may be practical.

¶52 The context clearly requires us to conclude that the legislature did not intend the use of the term "child support schedule" in RCW 26.19.090(1) to be as defined in RCW 26.19.011(2). We conclude it intended to make the economic table advisory, rather than the entire schedule. Under this interpretation, postsecondary educational awards would be made under the same rules that awards of support are made for those children when they are younger and for their younger siblings. The trial court, after deciding postsecondary support is appropriate, may consider the basic needs of the student and the costs of attendance. The court is not bound to follow the economic table in setting postsecondary support. The economic table may advise the level of support obligation placed upon the parents or it may be ignored. However, the other requirements of chapter 26.19 RCW remain applicable. Specifically, we hold that postsecondary support must be apportioned according to the net income of the parents as determined under the chapter.

## V. Attorney Fees

¶53 Daubert requests attorney fees for this appeal. She claims that while Johnson can easily afford this appeal, she cannot and had no choice but to defend the award. Daubert also claims that Johnson's appeal had little merit arguing that he did not address "the key findings entered by the trial court." Accordingly, she asks for attorney fees.

¶54 Neither the appeal nor the cross-appeal is frivolous. Each party has prevailed on its respective claims. We decline to award fees to either party as a prevailing party. We award fees on appeal to Daubert pursuant to RCW 26.09.140.

## CONCLUSION

¶55 We reverse the award of child support for Rusty and Kara and remand for findings of fact and award of support

consistent with this opinion. We affirm the amount of postsecondary support ordered for Rusty but remand for the apportionment of that support consistent with the net income of the parents. We reverse the award of child support for Kara which coincides with Rusty's postsecondary support and remand for recalculation based on two children receiving support. We award fees on appeal to Daubert.

Cox, C.J., and AGID, J., concur.

Reconsideration granted and opinion modified December 16, 2004.