# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| ERIC R. SHIBLEY, | ) | No. 73508-0-I |
| | ) | |
| Appellant, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| TINA M. SHIBLEY, | ) | UNPUBLISHED OPINION |
| | ) | |
| Respondent. | ) | FILED: December 27, 2016 |

SPEARMAN, J. — Eric Shibley appeals the trial court's orders establishing a parenting plan and determining the amount of child support in the dissolution of his marriage to Tina Shibley. He argues that the trial court abused its discretion when it limited his residential time with and decision-making authority for their son. He also contends that the trial court improperly deviated from the standard child support calculation without making the necessary factual findings. We affirm in part, reverse in part, and remand for a determination of a reasonable child support award based on actual estimates of the cost of the child's needs.

## FACTS

Tina and Eric Shibley were married in 2008 in Nashville, Tennessee. In 2010 they relocated to Washington and their son, Ryan, was born. Tina's ability to work was limited by a traumatic brain injury she suffered in a car accident in 1998. She also suffered from migraines and depression.

The couple separated in 2013 when Tina and Ryan went to a domestic violence shelter. Eric filed for dissolution on June 27, 2013. On August 13, 2013, Snohomish County Superior Court entered a temporary order that granted equal residential time to each parent, appointed a guardian ad litem, and authorized joint decision-making. In December 2013 the parties executed a stipulated order in which they agreed to update each other on Ryan's health and follow the recommendations of his health care providers.

Trial began on March 15, 2015. The court heard testimony from Eric, Tina, the Guardian Ad Litem, various medical and care providers who worked with Ryan or Tina, the party's experts, the party's employers or employees, and law enforcement personnel. On April 1, 2015, the trial court ordered that Ryan reside with Tina and limited Eric's residential time based on findings of neglect, abusive use of conflict and not acting in the child's best interest under RCW 26.09.191(3)(a)(e).

Eric stipulated that his monthly income was $30,000 gross, $20,592 net; Tina stipulated that her income was $410 gross, $379 net. For the child support payment, the trial court determined Eric's net monthly income based on his testimony and stipulation and arrived at a value of $15,581. The court found that Tina's monthly income was $331.46. Their combined income was higher than RCW 26.19.020's top support schedule tier of $12,000. The trial court considered Ryan's "[s]pecial medical, educational, or psychological needs," and awarded a

transfer payment of $3,000 per month. CP at 34-37. Eric appeals the order for child support and parenting plan.[1]

## DISCUSSION

### Parenting Plan

We review a trial court's parenting plan for an abuse of discretion. In re Marriage of Katare, 175 Wn.2d 23, 35, 283 P.3d 546 (2012). A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or reasons. In re Marriage of Kovacs, 121 Wn.2d 795, 801, 854 P.2d 629 (1993). A decision is based on untenable grounds if the factual findings are unsupported by the record; it is based on untenable reasons if it is based on an incorrect standard or the facts do not meet the requirements of the correct standard. State v. Rundquist, 79 Wn. App. 786, 793, 905 P.2d 922 (1995).

Regarding parenting plans, the trial court's discretion is "cabined by several provisions in chapter 26.09 RCW," including RCW 26.09.191(3)(g). In re Marriage of Chandola, 180 Wn.2d 632, 642, 327 P.3d 644 (2014). This statute bars the trial court from "'preclud[ing] or limit[ing] any provisions of the parenting plan' (i.e., restricting parental conduct) unless the evidence shows that '[a] parent's . . . conduct may have an adverse effect on the child's best interests.'" Id. A court may consider the following factors when imposing discretionary restrictions:

---

[1] As part of the decree of dissolution, the trial court made a distribution of marital property and awarded Tina her reasonable attorneys' fees. The judgment representing the property distribution and award of fees was originally included in this appeal, but has been resolved as part of Eric's Chapter 11 bankruptcy action, cause no. W.D. Wash. 15-13725-CMA.

(a) A parent's neglect or substantial nonperformance of parenting functions;

...

(e) The abusive use of conflict by the parent which creates the danger of serious damage to the child's psychological development;

...

(g) Such other factors or conduct as the court expressly finds adverse to the best interests of the child.

RCW 26.09.191(3)

The trial court limited Eric's residential time based on (3)(a) (neglect of parenting functions), (3)(e) (abusive use of conflict), and (3)(g) (conduct adverse to the child's best interests).[2] Eric argues that the restrictions under RCW 26.09.191(3) are not supported by the evidence.[3]

The court cited several bases for its findings of neglect,[4] including that Eric had left Ryan "alone in a locked car in eighty-one degree weather." CP at 26. Eric was issued a criminal citation on May 1, 2014 for leaving a child unattended in a vehicle. The trial court also found neglect in Eric's failure to "acknowledge [Ryan's] behavioral and emotional problems, and the fact that [he] obstructed the

---

[2] Eric argues that no restrictions should have been placed on his residential time because there were no findings under RCW 26.09.191(1) and (2). This argument has no merit. Subsections 1 and 2 impose mandatory restrictions if such findings are made; subsection 3 gives the court the discretion to restrict residential time if any of the factors are found. It does not require a court to make findings under the other subsections in order to exercise this authority.

[3] He also argues that the only substantial nonperformance of parenting functions was a result of Tina absconding with Ryan and not disclosing her whereabouts or letting Ryan contact him for five months. But because Tina did not argue substantial nonperformance and the trial court did not impose restrictions on that basis, we do not address the argument.

[4] Eric also relies on Travis v. Bohannon, 128 Wn. App. 231, 115 P.3d 242 (2005) to argue that the trial court's findings do not rise to the level of negligence. The case is not helpful because it discusses the elements of negligence in a tort setting. Because Eric cites no other relevant authority, we reject the argument.

4

respondent in her ability to get the child therapy." CP at 26. Tina testified that Eric was not on board about therapy, and described how Eric "did not think [Ryan] needed it, that the problems with Ryan were my fault and that I was in violation of the agreed order." Verbatim Report of Proceeding (VRP) at 1280-82. In his deposition, Eric testified that Ryan "does not have [a] problem with me, so ... I don't think he needs [therapy or counseling]." CP at 433. A letter from Eric's counsel also declared his "philosophical opposition to children being involved in counseling." Ex. 154. Tina had to resist Eric's motion to suspend the agreed parenting order after Ryan's doctor recommended counseling. The trial court's bases for finding neglect under RCW 26.09.191(3)(a) are sufficiently supported by the record.[5]

Eric next argues that the findings of abusive use of conflict are either insufficient or not supported by substantial evidence. He further argues that they either do not constitute abusive use of conflict or did not endanger his son's psychological health. Generally, courts find an abusive use of conflict where one parent inserts the child into a parental conflict, which could psychologically damage the child. In re Marriage of Burrill, 113 Wn. App. 863, 868, 56 P.3d 993 (2002).

---

[5] Eric argues that the trial court's finding that he left Ryan "in his workplace without appropriate supervision" was based on no evidence. Br. of Appellant at 24. In his deposition, Eric testified that Ryan would sometimes go to work with him and stay with one of his staff members. CP 187-88. The GAL found "inconsistency" in the number of hours worked that Eric reported, suggesting that he may have been working more hours than he admitted, and that the "question then arises as to what [Ryan] is doing and who is watching him while Eric is working (i.e. a medical assistant, or daycare." Exhibit (Ex.) 17, at 24. Eric testified at trial that his staff members watch Ryan while he is working. VRP 1120-1. This evidence supports the trial court's finding.

We review a trial court's findings of fact for substantial evidence and review

de novo whether those findings of fact support the trial court's conclusions of law.

In re Marriage of McDole, 122 Wn.2d 604, 610, 859 P.2d 1239 (1993). Evidence is

substantial when there is a sufficient quantum of evidence "to persuade a fair-

minded person of the truth of the declared premise." Burrill, 113 Wn. App. at 868.

An appellate court may not substitute its findings for the trial court's where there is

ample evidence in the record to support the trial court's determination. Kovacs, 121

Wn.2d at 810. We defer to the trier of fact for the purposes of resolving conflicting

testimony and evaluating the persuasiveness of the evidence and credibility of the

witnesses. Thompson v. Hanson, 142 Wn. App. 53, 60, 174 P.3d 120 (2007),

The trial court found:

> [T]he petitioner engaged in the abusive use of conflict by failing to
> pay child support after the court ordered him to do so; refused to
> discuss health care with the respondent after the court ordered him
> to do so; obtaining new physicians for the child without notifying the
> respondent; selling the mobile home in violation of the court's order;
> threatening Dr. Shushan, the pediatrician, with a 'personal jihad' in
> front of the child; the litigation tactics that he allowed to continue
> which included abusive letters from petitioner's counsel belittling
> the respondent's concerns about the child's health, as well as her
> own mental state; and disclosing respondent's journals and private
> medical records without her permission when he is a licensed
> physician well-versed in HIPPA.

CP at 26. The record supports the finding that Eric failed to pay child support when

ordered, resulting in entry of judgment for back support. There is also evidence

that Eric refused to discuss health care with Tina after being ordered to do so. Eric

testified that he took Ryan to two physicians and a new dentist and three different

counselors without notifying Tina. Eric explained that he didn't tell Tina because, in

his view, he "ha[d] to be asked" and Tina had not done so. CP at 1129. Eric also took Ryan to be vaccinated without telling Tina what vaccinations he received. The record also reveals that Eric disclosed Tina's personal journals and medical records without her permission and engaged in litigation tactics that belittled Tina's mental health and her concerns about the Ryan's health.

Eric argues that these findings do not support the trial court's conclusion that his purported use of conflict endangered Ryan's psychological development. We disagree. The trial court found that Eric had 'engaged in erratic and disturbing behavior that put the child in danger, and in the middle of conflict," and his "emotional outbursts have an impact on the child." Id. Testimony from Ryan's physician, Dr. Shushan, supports this finding. Dr. Shushan testified that she recommended that Ryan "receives psychological counseling as soon as possible given the tremendous strife and disruption in the family. This has a great impact on his behavioral and psychological well-being and he ... would benefit from regular, appropriate pediatric counseling on an ongoing basis." VRP (3/19/15) at 578.

Dr. Shushan also testified about Eric's angry outbursts towards her, demanding that she take back her recommendation and that he would wage a "personal jihad against her" if she did not. Eric also threatened to subpoena her for deposition and file a complaint against her with the medical board. VRP (3/19/15 at 584). She also testified that people in her office could hear Eric yelling "halfway down the hallway" and that during this time Ryan was sitting on the floor in her office and he "seemed quite comfortable with the volume of what was happening."

7

VRP (3/19/15) at 584-85. The GAL testified that Eric also got into a yelling match with Ryan's therapist in front of Ryan.

Additionally, the police report stated that after being retrieved from the hot car, Ryan "was very upset watching his Father throw himself on the concrete parking lot. Eric ... was yelling and crying at a very loud level. Ryan started to cry many times watching his Father." Ex. 148. Officer Wood testified that Ryan was "looking in our direction a majority of the time," while Eric refused to provide identification and was "pleading with me, begging me saying, you know, I throw myself on my knees to you." VRP (3/18/15) at 343. He recalled the supervising officer telling Eric to stop because "he was making such a big scene in front of the child." VRP (3/18/15) at 345.

Finally, the trial court found that placing Ryan in multiple day cares for short periods of time was conduct expressly adverse to his best interests under RCW 26.09.191(3)(g). The record contains ample evidence in support of this finding, including Eric's own testimony conceding that Ryan was "[i]n multiple daycares before when he was 3, between 3 and 4 years of his age[.]" VRP (3/23/15) at 1013. See also Ex 17, at 19-21 (GAL report summarizing interviews with day care providers in Everett, Marysville, Normandy Park, and Puyallup about the frequency of visits and concerns about Ryan's behavior).

There is substantial evidence in the record to support the trial court's findings that Eric exhibited neglect of parenting functions, engaged in the abusive use of conflict which created a danger of serious damage to the child's psychological development, and otherwise engaged in conduct that was expressly

adverse to the child's best interests under RCW 26.09.191(3)(a), (e), (g). We conclude that the trial court did not abuse its discretion when it placed restrictions on Eric's residential time with Ryan.[6]

Eric next argues that the trial court erred when it awarded sole decision making authority to Tina regarding criminal matters, getting tattoos, military service and marriage before the age of 18. He contends that these matters are beyond the scope of the trial court's authority under RCW 26.09.184(5)(a). These particular areas of decision-making authority are listed under Section 4.2 "Major Decisions" of the Amended Parenting Plan.[7] CP at 11.

RCW 26.09.187(2)(b)(iii) requires the trial court to award sole decision-making ability to one parent if one of the two is opposed to mutual decision-making and the opposition is reasonable in light of specified statutory factors, including the existence of a limitation under RCW 26.09.191. Here, the trial court awarded sole decision-making authority to Tina based on the factors listed in RCW 26.09.191(3).[8]

---

[6] Eric argues that the court should have entered findings as to Tina's abusive use of conflict that endangered their son's psychological development. But he cites no authority in support of the argument and we reject it.

[7] The trial court used an Administrative Office of the Court approved form, WPF DR 01.0400 Mandatory (6/2008) – RCW 26.09.016; .181; .187; .194, for the parenting plan that contained a list of these "Major Decisions" and space to allocate decision-making authority to one or both of the parties. CP at 11.

[8] Although not assigned as error by either party we note that the trial court checked the box for restricting decision-making authority under RCW 26.09.187(2)(b)(i), which mandates restrictions based on findings under RCW 26.09.191(1) or (2). We conclude that this is a scrivener's error because the trial court expressly found that RCW 26.09.191(1)(2) "[d]oes not apply." CP at 5. In any event, the error is harmless because the award of sole decision-making authority to Tina is warranted based on the trial court's finding that one parent is opposed to mutual decision making based on the criteria set out in RCW 26.09.187(2)(b)(iii), (c).

Here, Eric does not argue that the trial court erred when it awarded sole decision-making authority to Tina based on RCW 26.09.187(2)(b)(iii), only that the trial court had no authority to grant sole decision-making to one parent in areas other than those set forth in RCW 26.09.184(5)(a), which states that "[t]he plan shall allocate decision-making authority to one or both parties regarding the children's education, health care, and religious upbringing." While the statute mandates that the court allocate decision-making authority in specified areas, nowhere does it prohibit the court from including provisions relating to decision making in other unspecified areas absent an agreement. Rather, the statute merely provides that the parties "may" incorporate an agreement for decision making in either of these specified areas or other areas.

Lastly, Eric argues that primary residential placement should have been awarded to him because the trial court did not appropriately weight the statutory factors. Under RCW 26.09.187(3)(a), a trial court "shall make residential provisions for each child which encourage each parent to maintain a loving, stable, and nurturing relationship with the child, consistent with the child's developmental level and the family's social and economic circumstances." The residential schedule shall be consistent with any restrictions imposed by RCW 26.09.191, and the court is required to consider the following factors:

> (i) The relative strength, nature, and stability of the child's relationship with each parent;
>
> . . .
>
> (iii) Each parent's past and potential for future performance of parenting functions as defined in RCW 26.09.004(3), including

whether a parent has taken greater responsibility for performing parenting functions relating to the daily needs of the child;

...

RCW 26.09.187(3)(a). Factor (i) shall be given the greatest weight.

The parenting schedule must be based on statutory factors and the parties' circumstances at the time of trial. Littlefield, 133 Wn.2d at 56. Eric asks us to reweigh the evidence and find in his favor. He argues that the trial court failed to consider the parties' future ability to perform the necessary parenting functions. To the contrary, there is ample evidence in the record that the trial court evaluated both parties for their future ability to serve in a parental capacity. There is also substantial evidence in the record that Tina exhibited good parenting skills, had made strong improvements in her mental health since the separation, and that she had worked hard to address both her and Ryan's particular challenges.

Child Support

We review an award of child support for abuse of discretion. In Re the Marriage of Griffin, 114 Wn.2d 772, 776, 791 P.2d 519 (1990). Under the state-wide child support schedule, a court must set the child support obligation of each parent according to a standard calculation. Sacco v. Sacco, 114 Wn.2d 1, 3-4, 784 P.2d 1266 (1990); In re Marriage of Lee, 57 Wn. App. 268, 275, 788 P.2d 564 (1990). The standard calculation is defined as "the presumptive amount of child support owed as determined from the child support schedule before the court considers any reasons for deviation." RCW 26.19.011(8). Thus, after determining the presumptive amount of child support owed, a court may, in its

discretion, deviate from the standard calculation. In re Griffin, 114 Wn.2d at 776; RCW 26.19.075(1)(a). A trial court must first determine the income of each parent, considering monthly gross income from all sources. RCW 26.19.071(1) (3). From the monthly gross incomes, the court makes deductions to arrive at each parent's monthly net income. RCW 26.19.071(5).

The economic table in RCW 26.19.020 establishes the basic child support obligation amount for combined monthly net incomes of up to $12,000. Upon written findings of fact, the trial court may exceed the presumptive amount of support for higher incomes. RCW 26.19.020. When determining the amount of support for monthly incomes over the presumptive statutory maximum, a court should not apply a "mechanical extension of the economic table" but follow RCW 26.19.001's requirement that the amount of support be based on the child's needs and commensurate with the parents' income, resources, and standard of living. McCausland v. McCausland, 159 Wn.2d 607, 617, 152 P.3d 1013 (2007).

The trial court's findings of fact must explain why the amount of support ordered is both necessary and reasonable. In re Marriage of Daubert and Johnson, 124 Wn. App. 483, 495-96, 99 P.3d 401 (2004), abrogated on other grounds by McCausland, 159 Wn.2d 607. Factors to be considered in determining the necessity for support include but are not limited to the special medical, educational and financial needs of the children. Daubert, 124 Wn. App. at 495-96. Cursory findings are not sufficient. Id.

12

The trial court found the parents' combined monthly net income exceeded

$12,000, and ordered more support than the preset amount for $12,000 because:

> the mother is unable to work full time due to a physical injury from which she is continuing to recover. The father is a physician, whose income far exceeds the top threshold for support calculations, which income allows for a higher standard of living for the child than that which would be obtained from the standard calculation. The child in this case is also in need of ongoing counseling and behavioral therapy, as well as educational support to reach the typical developmental level for his age. A transfer payment in excess of the standard calculation is just and necessary under the circumstances to assist the child in receiving that behavioral therapy and educational support.

CP at 36. The trial court used the parties' stipulated gross incomes to calculate a

gross child support obligation of $1447.24 per month. The court ordered Eric to

pay $3,000 per month instead, because of the "[s]pecial medical, educational, or

psychological needs of the child." CP at 37. The trial court further found:

> Eric Ryan Shibley is a child who has significant behavioral problems, and potentially undiagnosed ADHD and developmental delays. He has been receiving therapy from an unlicensed therapist for the past 12 months in violation of the Court's orders relating to joint decision-making between the parties relative to medical treatment. The child has been placed in numerous drop-in daycares by the father, and several longer-term daycares and preschools by the mother. He has been expelled from one or more of those day cares due to his violent, out of control behavior. The court finds that the lack of stability in his life, along with the high conflict between the parties during this dissolution proceeding, has exacerbated the stress on this child, and that he is in need of therapy and treatment per the recommendations of his pediatrician, Dr. Shushan.

CP at 37.

Eric argues that the trial court did not make sufficient factual findings to

support an award greater than the amount on the worksheet. According to him, the

trial court failed to consider and implement the factors listed in Daubert and make findings that were beyond "cursory." The "special medical, educational, or psychological needs of the child" is one of the factors listed in Daubert and in RCW 26.19.075, for consideration when deviating from the standard calculation. The trial court reviewed the testimony regarding Ryan's psychological needs and made detailed findings that supported the necessity and reasonableness of additional therapy and support. These findings are far more detailed and specific than those we rejected in Daubert. We conclude they are sufficient to justify an award greater than the standard calculation.

Noticeably absent in the court's findings, however, are estimates of the cost of Ryan's proposed treatment. In Daubert, the appellate court remanded for findings about the reasonableness of the support amount, stating that "[w]ithout cost estimates, the court had no basis to determine an amount to award for the opportunities sought and had no basis to make findings about the reasonableness of that amount." Daubert, 124 Wn. App. at 498. While the findings regarding Ryan's behavioral issues may be sufficient to justify a greater award, we are unable to find support in the record for a payment of $3000. Without estimates of the cost of treatment, we have no basis to determine whether the amount of support is necessary and reasonable. We therefore reverse and remand to the trial court for a determination of a reasonable and necessary child support award based on cost estimates of Ryan's special medical, educational, or psychological needs.

Tina requests an award of fees and costs on appeal under RCW 26.09.140. The statute permits an appellate court to order a party to pay for the cost of

maintaining the appeal of a dissolution proceeding and attorneys' fees in addition to statutory costs. Tina has submitted an affidavit of financial need. Eric has not requested fees or costs and the parties have jointly provided the order confirming Eric's Chapter 11 bankruptcy plan. Based on the financial information before us, we find that while Tina has the financial need, it does not appear that Eric has the ability to pay. An award of fees is discretionary. We hold that each party shall bear his or her own costs and attorney fees on appeal.

Affirm in part, reverse in part and remand for further proceedings consistent with this opinion.

Spearman, J.

WE CONCUR: